411 S.E.2d 472

**Elizabeth A. KIMBLE, Defendant Below, Appellant,**

**v.**

**Keith A. KIMBLE, Plaintiff Below, Appellee.**

**No. 20059.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Nov. 1, 1991.

John G. Ours, Petersburg, for appellant.

Jerry D. Moore, Franklin, for appellee.

PER CURIAM:

Elizabeth A. Kimble appeals certain aspects of the property settlement contained in the final order of the Circuit Court of Pendleton County that granted Mrs. Kimble and her former husband, Keith A. Kimble, a divorce on the grounds of irreconcilable differences. On appeal Mrs. Kimble contends that the circuit court did not properly evaluate certain property, namely Mr. Kimble's separately owned funeral and monument business and failed to distribute equitably the increase in value. We find no error in the circuit court's evaluation of Mr. Kimble's separate property and, therefore, we affirm the decision of the circuit court.

When Mr. and Mrs. Kimble married in 1982, Mr. Kimble owned a funeral business and the building in which it operated. The parties agree that in 1982 the funeral building was worth $100,000. During the marriage, Mr. Kimble operated his funeral business, began a monument business and made substantial improvements in the funeral building. Mrs. Kimble continued to teach and none of the parties' separate assets was jointly titled. The Kimbles had no child.

After Mr. Kimble sued for divorce in 1988, a family law master heard the case and decided that the funeral building had no increase in value although $39,981 had been spent on renovations during the marriage.[1] Mr. Kimble presented two local real estate agents who testified that the value of the funeral building remained at $100,000 because of the depressed housing market in Pendleton County and because the renovations added nothing to the market value. Mrs. Kimble's expert, another real estate agent, testified that the funeral building had a value of $167,000. However, Mrs. Kimble's real estate agent acknowledged that he had not sold a house in Franklin, West Virginia for at least ten years.

The family law master also heard conflicting evidence concerning the increase in value of Mr. Kimble's funeral and monument business. Mr. Kimble's experts included Gregory W. Geisert, a CPA, and Donald Trobaugh, a funeral director from Harrisonburg, Va. Mr. Geisert said the funeral business' goodwill was worth between 0 and $43,920 depending on the method of evaluation. However, Mr. Geisert concluded that "no value [should be] placed on the goodwill because earnings are not above the normal industry rates." Mr. Trobaugh said that, according to the International Order of the Golden Rule, the national organization for funeral directors, the standard accounting methods value goodwill at $1,000 per adult funeral. In 1982, Mr. Kimble directed 39 funerals; and in 1988, Mr. Kimble directed 45 funerals resulting, according to the alleged standard accounting method, in an increase of $6,000 in goodwill.

Mrs. Kimble's expert was Henry Kopple, an accountant, who testified that the business had a net operating loss for the first three years of the marriage and that in the last three years before the parties' separation the business showed the net value of $308,000. (Mr. Kimble began the monument part of his business in 1986.)[2] The family law master decided that Mr. Kimble's business had a value in 1988 of $45,000, or a net increase since 1982 of $6,000.

The family law master also considered Mr. Kimble's debts. In 1982, the funeral building secured a lien in the amount of $76,208, which by 1988 had been reduced to

---

1. During the marriage, the parties lived in the upstairs part of the funeral building. The renovations made by the parties included: (1) putting siding on the building; (2) adding a dining room, a laundry room and a deck; and, (3) remodeling the chapel, a bathroom, the kitchen, the office, the vault room and the embalming room.

2. The increase in the value of Mr. Kimble's business is difficult to determine because the business was organized as a sole proprietorship and no specific salary was paid to Mr. Kimble. In addition, the business had a net profit in 1986 and 1987, but in 1988, the business operated at a loss. Thus, there is no clear pattern of increase and the yearly fluctuations made the determination of value difficult.

$7,208 (a reduction of about $69,000.) However, Mr. Kimble's unsecured indebtedness had increased in 1988 to $99,283.12. After subtracting the tax liabilities from Mr. Kimble's unsecured indebtedness, the family law master found the balance of Mr. Kimble's unsecured indebtedness was $69,-612.34.[3] The family law master found that the reduction in the secured debt was offset by the increase in unsecured debt.

The family law master found that Mrs. Kimble contributed $15,000 from her separate funds to Mr. Kimble's business with $10,000 used to reduce the secured debt and $5,000 spent for siding for the funeral building. The family law master required Mr. Kimble to repay the $15,000 to Mrs. Kimble.

Mrs. Kimble was also awarded 7% of the net proceeds of the accounts payable on the pre-need burial contracts "which amount represents the Defendant's share of the funeral and monument business ($3,000.00) as relates to the value of the funeral and monument business ($45,000.000 [sic])." The family law master then divided the parties' marital property and Mrs. Kimble received property valued at $33,276.52 and Mr. Kimble, $34,632.85.

The circuit court heard additional testimony on the value of Mr. Kimble's business using the capitalization of net earnings method from Mr. Kopple, Mrs. Kimble's expert witness. Mr. Kopple testified that in 1982, Mr. Kimble's business had no value and in 1987, a value of $369,000 less the liabilities. Mr. Kopple acknowledged

that 1987 was Mr. Kimble's most profitable year and if 1988 figures were used, Mr. Kimble's business would have no value.

After considering the additional evidence, the circuit court found that the family law master correctly valued the parties' marital property and the circuit court adopted the findings of the family law master. Mrs. Kimble, then, appealed to this Court alleging that the net increase in Mr. Kimble's separate property was too low and that she should have been awarded half of Mr. Kimble's stock in the Pendleton County Bank rather than the value of the stock.

I.

In Syllabus Point 1, *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), we noted that *W. Va. Code*, 48–2–32 [1984], requires a three-step process for equitable distribution, namely, characterization of property as marital or separate, valuation and distribution. The parties agree that Mr. Kimble's funeral business, acquired by him before the marriage, remained his separate property.[4] *W. Va. Code*, 48–2–1(f)(1) [1990], states that "[p]roperty acquired by a person before marriage" is separate property.

However *W. Va. Code*, 48–2–1(e)(2) [1990], includes as marital property "[t]he amount of any increase in value in the separate property ... which increase results from ... (B) work performed by either or both of the parties during the marriage."[5] In

---

**3.** Also deducted from Mr. Kimble's unsecured indebtedness was a metal building ordered in 1986 but never received.

**4.** The monument part of Mr. Kimble's business, which began during the marriage, is marital property. However this part of the business had not begun to show a profit and had substantial liabilities.

**5.** *W. Va. Code*, 48–2–1(e)(2) [1990], in its entirety, states that the marital property means:

The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate

property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage.

The definitions of "marital property" contained in this subsection and "separate property" contained in subsection (f) of this section shall have no application outside of the provisions of this article, and the common law as to the ownership of the respective property and earnings of a husband and wife, as altered by the provisions of article three [§ 48–3–1 et seq.] of this chapter and other provisions of this code, are not abrogated by implication or otherwise, except as expressly provided for by the provisions of this article as such provisions are applied in actions brought under this article or for the enforcement of rights under this article.

Syllabus Point 2, *Shank v. Shank*, 182 W.Va. 271, 387 S.E.2d 325 (1989), we said:

Active appreciation of separate property of either of the parties to a marriage, or that increase which "results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage" is marital property which is subject to equitable distribution. W.Va.Code § 48–2–1(e)(2) (1986).

Both the family law master and the circuit court gave careful consideration to the "increase in value" of Mr. Kimble's separate property and correctly determined that increase to be marital property, subject to equitable distribution. However, Mrs. Kimble objects to the circuit court's holding that during the parties' six-year marriage the funeral building had no increase in value in spite of spending almost $40,000 on renovations, and Mrs. Kimble objects to the circuit court's holding that the funeral business had only a $6,000 increase in value.

Recently in *Tankersley v. Tankersley*, 182 W.Va. 627, 390 S.E.2d 826 (1990), we discussed the evaluation of a funeral business that was a marital asset. We noted that *W.Va.Code*, 48–2–32(d)(1) [1984] requires the court to "[d]etermine the net value of all marital property of the parties...." We noted that in valuing a single asset, "the net value equals the fair market value of the property less the amount of any lien or encumbrance." *Tankersley*, 182 W.Va. at 629, 390 S.E.2d at 828. In Syllabus Point 3, in part, *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983), we said:

In computing the value of any net asset, the indebtedness owed against such asset should ordinarily be deducted from its fair market value.

The present case is complicated only because the net increase in value is a marital asset. Obviously, the *pre-marriage* value of the assets remains the separate property of Mr. Kimble and such amount is not subject to equitable distribution.

(A)

■ With regard to the funeral building, the parties agreed that the building was worth $100,000 in 1982 and that about $40,000 had been spent on renovations. The parties presented conflicting expert testimony from real estate agents concerning the building's 1988 market value. In Syllabus Point 3, *Estate of Aul v. Haden*, 154 W.Va. 484, 177 S.E.2d 142 (1970), we said:

The market value is the price at which a willing seller will sell and a willing buyer will buy any property, real or personal.

*In accord* Syllabus Point 1, *Tankersley, supra; Wood v. Wood*, 184 W.Va. 744, 403 S.E.2d 761 (1991). Both the family law master and the circuit court decided that the funeral building had no increase in value. Two local real estate agents testified for Mr. Kimble that the renovations had not increased the value because of local market conditions, and Mrs. Kimble's expert testified that the funeral building had a market value of $167,000 in 1988. However, Mrs. Kimble's expert had not sold a house in the area for at least 10 years and the house that he used for comparison had been returned to the owner who had financed its sale himself.

■ In Syllabus Point 1, *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), we said:

"A measure of discretion is accorded to a family law master in making value determinations after hearing expert testimony. However, the family law master is not free to reject competent expert testimony which has not been rebutted. This statement is analogous to the rule that '[w]hen the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.'" Syllabus Point 1, in part, *George v. Godby*, 174 W.Va. 313, 325 S.E.2d 102 (1984), *quoting* Sylla-

bus Point 4, *Smith v. Godby*, 154 W.Va. 190, 174 S.E.2d 165 (1970).

In the present case, the family law master and the circuit court did not abuse their discretion in determining that the funeral building had no increase in value.

### (B)

■ The determination of the increase in the net value of Mr. Kimble's funeral business was complicated by the following factors: (1) no deductions were made for Mr. Kimble's salary; (2) the funeral business was profitable only in 1986 and 1987; and (3) the debt structure of the business had changed from secured to unsecured. The parties agreed that when the parties married in 1982 Mr. Kimble's business was operating at a loss. To determine the 1988 value of the funeral business, Mr. Kimble's experts presented several different evaluation methods. Using a goodwill evaluation method, Mr. Geisert found a value between 0 and $43,920 with no allowance for Mr. Kimble's salary. However, Mr. Geisert concluded that because the earnings of the business were not above the normal industry rates, the business' goodwill had no value. Mr. Trobaugh testified that the national organization of funeral directors, the International Order of the Golden Rule, valued a business' goodwill based on $1,000 per adult funeral. Using the $1,000 per adult funeral measure, Mr. Kimble's business had a net increase in value of $6,000.

Mrs. Kimble's expert used two different methodologies to value the business. The first method was based on an average of the last three years of earnings and resulted in a value of $308,000. However, Mr. Kopple did not know if this evaluation represented a market value because this was his first funeral home evaluation and because no deduction for salary had been made. Mr. Kopple also valued the business using the capitalization of earnings method discussed in *Tankersley, supra*, 182 W.Va. at 630–31, 390 S.E.2d at 829–30. However, because the business' earnings had fluctuated, the results of the capitalization of earnings method greatly varied by year; for example in 1986, the business had no value but, in 1987, a value of $369,300 (less legitimate debts) and again in 1988, the business lacked value.

■ In Syllabus Point 3, *Tankersley, supra*, we said:

The fair market value of a closely held corporation or other business is not necessarily equivalent to its "net value" under W.Va.Code, 48–2–32(d)(1) (1984). Under this provision, the net value of a closely held corporation or business equals the net amount realized by the owner should the corporation or business be sold for its fair market value. The pertinent inquiry that must be made is whether the owner-seller will be responsible for the debts of the corporation or business, assuming a sale for its market value.

Given the record, we find that the family law master and the circuit court did not abuse their discretion in determining that the funeral business had a net increase in value of $6,000. *See*, Syllabus Point 1, *Bettinger, supra*.

### (C)

■ Mrs. Kimble next maintains that the reduction of the business' secured debt increased the net value and, thus, was a marital asset subject to equitable distribution. However, the record shows that the reduction in secured debt of approximately $69,000, was off-set by an increase in the business' unsecured debt in approximately the same amount. Mrs. Kimble maintains that the unsecured debt contains elements that are not business related. The record indicates that the unsecured debts were carefully examined by the family law master who disallowed certain debts, mostly tax liabilities. The unsecured debt that was allowed includes bills for caskets, monuments, insurance, advertising and a hearse lease—all legitimate business debts.

■ The record also indicates that Mrs. Kimble, from her separate funds, contributed $15,000 to Mr. Kimble's funeral building ($5,000 for siding) and for debt reduction ($10,000). The family law master and the circuit court correctly ordered Mr. Kimble to repay the $15,000.

We find that there was no abuse of discretion in the determination of the legitimate debts of Mr. Kimble's business and in requiring the repayment of Mrs. Kimble's contribution from her separate funds. *See,* Syllabus Point 3, *Tankersley, supra; Hamstead v. Hamstead,* 184 W.Va. 272, 400 S.E.2d 280, 284 (1990); Syllabus Point 1, *Bettinger, supra.*

■ Finally Mrs. Kimble urges us to give her half of the stock that the parties acquired during the marriage even though Mrs. Kimble was given the value of half of the stock. Given that Mrs. Kimble has received half the value of the stock and can acquire the stock herself, we find no error requiring the reversal of the circuit court's decision.

For the above stated reasons, the decision of the Circuit Court of Pendleton County is affirmed.

Affirmed.