550 S.E.2d 86

**Willa Kay STEWART, Plaintiff Below, Appellee,**

v.

**Richard M. STEWART, Defendant Below, Appellant.**

No. 28741.

Supreme Court of Appeals of West Virginia.

Submitted April 4, 2001.

Decided June 27, 2001.

Concurring Opinion of Justice Starcher, July 9, 2001.

---

Larry A. Winter, Esq., Winter, Johnson & Hill, P.L.L.C., Charleston, West Virginia, Attorney for Appellee.

Michael M. Fisher, Esq., Monica L. Robinson, Esq., Offutt, Fisher & Nord, Huntington, West Virginia, Attorneys for Appellant.

PER CURIAM:

The appellant in this proceeding, Richard M. Stewart, claims that the Circuit Court of Cabell County erred in ordering him to pay his former wife permanent alimony of $3,837 per month. Specifically, he argues that the circuit court improperly found him guilty of mental cruelty, that the court erred in awarding his former wife permanent, rather than rehabilitative alimony, and that the court erred in setting the permanent alimony at $3,837 per month, when his actual monthly income was only $6,000 per month. Lastly, the appellant claims that he should not have been ordered to pay his former wife's attorney and expert witness fees.

## I.

### FACTS

The appellant, Richard M. Stewart, and the appellee, Willa Kay Stewart, were married on May 27, 1972, and they later had three children, only one of whom is now under the age of majority.

During the parties' marriage, the appellant worked as an accountant and he eventually became a partner in an accounting firm. Early in the parties' marriage, the appellee worked as a receptionist in a doctor's office, but after the birth of her children, she ceased working and became a full-time homemaker.

On October 28, 1994, after more than 22 years of marriage, the parties separated, and, following the separation, the appellant's former wife filed for divorce on the grounds of mental cruelty, or cruel and inhuman treatment, and irreconcilable differences.

The case was eventually heard by a family law master, and evidence was introduced showing that the appellant had on a number of occasions been seen in the company of a blonde female and had been observed kissing her in public. To explain this evidence, the appellant suggested that the blonde female was no more than a running companion and that he had kissed her simply to reassure her, and comfort her, when she learned that she had breast cancer. During the proceedings, extensive evidence was also introduced relating to the parties' expenses, income and assets.

At the conclusion of the hearings, the family law master issued a recommended decision. The recommended decision granted the parties a divorce on the ground of mental cruelty, awarded the appellant's wife custody of the parties' one child who was still a minor, ordered the appellant to pay child support, and ordered that the appellant pay his former wife $4,488 per month in permanent alimony. The order also distributed the parties' assets under the principles of marital distribution. In making the marital distribution, the family law master a valued the appellant's partnership interest in his accounting firm and awarded the appellant that asset, but directed that he pay his former wife for her one-half interest in that asset.

The appellant filed various exceptions to the recommended order of the family law master. Among other things, he challenged the finding of mental cruelty; he claimed that his former wife should not receive permanent alimony; he alleged that the amount of permanent alimony was excessive; and he claimed that he should not be required to pay his former wife's attorney and expert witness fees.

The circuit court conducted a hearing on the motion for reconsideration and upheld the finding that the appellant had been guilty of cruel and inhuman treatment. The court also rejected the appellant's claim that his former wife should not be entitled to permanent alimony. The court, however, changed the amount of permanent alimony from $4,488 to $3,837 per month. Finally, the court directed the appellant to pay his former wife's attorney and expert witness fees.

As has previously been stated, in the present proceeding, the appellant claims that the circuit court erred in upholding the finding of mental cruelty. He also argues that the court erred in awarding permanent alimony, and that the amount of permanent alimony, $3,837 per month, was excessive when his monthly income was actually only $6,000 per month. Lastly, he claims that the court erred in directing him to pay his former wife's attorney and expert witness fees.

## II.

## STANDARD OF REVIEW

■ This Court has indicated that in cases of this type, the decision of a circuit court should be reviewed by applying a three-pronged analysis. First, the underlying findings of fact should be reviewed under a clearly erroneous standard; then questions of law should be reviewed *de novo;* finally, questions of statutory construction should be reviewed *de novo. Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

## III.

## DISCUSSION

The appellant's first claim on appeal is that the trial court erred in failing to set aside the family law master's recommendation that his former wife be granted a divorce on the ground of mental cruelty, or cruel and inhuman treatment. He essentially argues that the evidence adduced does not support such a finding.

■ In Syllabus Point 1 of *Witte v. Witte,* 173 W.Va. 281, 315 S.E.2d 246 (1984), the Court stated that: " 'What constitutes cruel and inhuman treatment as a ground for abso-lute divorce under Code, 48–2–4, depends on the circumstances of each particular case.' Syllabus, *McLaughlin v. McLaughlin,* 126 W.Va. 498, 29 S.E.2d 1 (1944), *quoting* Syllabus Point 1, *Thacker v. Thacker,* 125 W.Va. 103, 23 S.E.2d 64 (1942)." Further, the Court has recognized that conduct by one party to a marriage which humiliates and embarrasses the other party and exposes the other party to public mockery of the marriage to such an extent that it tended to destroy the other party's mental and emotional well-being, is adequate to establish fault sufficient to support an award of alimony. *See, Dyer v. Tsapis,* 162 W.Va. 289, 249 S.E.2d 509 (1978).

In the present case, the family law master specifically found that the appellant had been observed traveling in a car with a woman who later turned out to be the blonde woman whom the appellant was observed kissing. There was also evidence that friends of the appellant's former wife made her aware of the fact that the appellant was exercising in a public park with this same woman on a number of occasions. Other evidence showed that when the appellant's former wife confronted him with this information and requested the name of the blonde, the appellant practiced deception. Finally, the appellant's former wife had specifically requested that the appellant refrain from continuing the relationship because it was embarrassing and humiliating to her and their children. In spite of this, the appellant continued to see the blonde. The appellant admitted kissing the blonde, but explained that the kiss was merely a consoling kiss designed to comfort the blonde after she learned that she had cancer.

■ On appeal, the real question which the Court must address is whether the circuit court's finding of mental cruelty was clearly erroneous in light of this evidence. While the appellant's evidence suggests that his relationship with the blonde, and the kiss were purely innocent, it is clear that his former wife found the situation to be extremely disturbing and embarrassing and humiliating and that the appellant continued his relationship with the blonde, in circum-

stances suggesting a romantic interest, after the appellant asked him to terminate it. The Court believes that the overall evidence in the case would support a finding of mental cruelty and that the circuit court's finding on that point was not clearly erroneous.

A second claim made by the appellant is that the circuit court erred in adopting the family law master's recommendation that the appellant's former wife receive permanent alimony. The appellant argues that the facts of the case indicate that, at most, his former wife should receive rehabilitative alimony rather than permanent alimony.

■ In the Syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977), this Court stated:

Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.

Further, in *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984), the Court discussed when a spouse should receive rehabilitative alimony rather than permanent alimony. The Court stated that the concept of rehabilitative alimony rests upon the premise that by encouraging a divorced spouse to become self-reliant, some of the financial problems to a divorce may be alleviated, and some sense of psychological fulfillment and independence may be instilled in the divorced spouse. The Court noted that it is utilized mainly where a younger dependent spouse entered marriage with marketable skills, which then deteriorated through non-use, or the dependent spouse evidenced a capability for self-support which could be developed through training or academic study. The Court concluded that the key factors in determining whether an award of rehabilitative alimony was appropriate were whether the dependent spouse had potential work skills and whether relative work was also available in the marketplace. The Court also indicated that such factors as age and health were significant because they reflected upon the ability to work and they were factors in job availability.

In the present case, that the appellant's former wife is now 50 years old, and she and the appellant lived together as husband and wife for 22 years. Although she did have a part-time job early during the marriage, she quit that job and became a homemaker while the appellant pursued a career as an accountant. The family law master found that although the appellant's former wife did have some work history, it was not significant in that she had only been employed briefly and on a part-time basis early in the marriage. The family law master also recognized that the appellant's former wife had a Board of Regents Degree from Marshall University, but that there was no evidence which tended to prove that that degree combined with additional education or training would enable her to become permanently employed.

■ After examining the family law master's findings, as well as the evidence relating to the age, past work experience, and education of the appellant's former wife, this Court cannot conclude that the findings were erroneous or that the circuit judge abused his discretion in awarding the appellee permanent alimony rather than rehabilitative alimony.

Relating to this claim is the appellant's assertion that the trial court erred in granting $3,837 per month in permanent alimony, when the evidence showed that he received only $6,000 per month in actual income.

The record indicates that the family law master in recommending that the court set the amount of the appellee's permanent alimony at $4,488 per month, found that the appellant's taxable income was $12,746 per month. The trial court reduced this amount to $3,837 per month on the ground that his former wife did not, at the conclusion of the proceedings, have certain expenses listed on her statement of expenses. The court, however, like the family law master, based the final alimony award on the conclusion that the appellant had an income of $12,746 per month.

It appears to this Court that the circuit court made the final permanent alimony award after considering the factors set forth

in W. Va.Code 48–2–16, the statutory provision governing marital distribution. One of those factors is the amount of property which the parties receive in marital distribution. In making marital distribution, the circuit court concluded that the appellant's accounting partnership interest was worth $200,000 and assigned to the appellant that interest. To correct the imbalance, the appellant was required to pay his former wife $100,000 for her marital share of the interest.

The appellant's claim that the amount of permanent alimony awarded was excessive is related to the distribution of the partnership interest. The appellant argues that while his technical taxable income is $12,746 per month, $6,000 of this goes to retire obligations arising out of the partnership interest. It appears to the Court that what the appellant is actually arguing is that his former wife received one-half of the gross value of the partnership interest, without being charged with any part of the obligations creating the gross value. Since his former wife received one-half of the gross value of the partnership interest without being charged with a share of the partnership obligations, the appellant is, in essence, arguing that it is improper to include in his income, which serves as a basis of his alimony obligation, that portion of his income which is being used to retire the partnership obligations.

After examining this question, it appears to this Court that the value of the partnership interest was arrived at on the basis of experts' testimony. Those experts arrived at partnership values by capitalizing the income which the partnership generated and then making certain adjustments to the calculated value. It does not appear that the ultimate valuation was arrived at by valuing assets of the partnership and then deducting liabilities of the partnership from the asset values, nor does it clearly appear that the liabilities were ultimately deducted from the partnership value.

■ When values are computed for specific simple assets for the purpose of marital distribution, West Virginia's rule is that ordinarily the indebtedness owed against the asset should be deducted against its fair market value. *See, Kimble v. Kimble*, 186 W.Va.

147, 411 S.E.2d 472 (1991). The rule relating to the valuation of a closely-held business is slightly different. However, debts or liabilities do still enter into the calculation. As stated in Syllabus Point 3 of *Tankersley v. Tankersley*, 182 W.Va. 627, 390 S.E.2d 826 (1990):

> The fair market value of a closely held corporation or other business is not necessarily equivalent to its "net value" under W. Va.Code, 48–2–32(d)(1) (1984). Under this provision, the net value of a closely held corporation or business equals the net amount realized by the owner should the corporation or business be sold for its fair market value. The pertinent inquiry that must be made is whether the owner-seller will be responsible for the debts of the corporation or business, assuming a sale for its market value.

It is not clear to this Court whether the circuit court gave the appellant credit for the partnership debts which he was obligated to pay. If he received such credit and the $200,000 valuation was placed on the partnership after such credit was granted, then the Court would conclude that it was not improper for the circuit court to base the appellant's alimony on his $12,746 per month net income since the $6,746 per month going to retire partnership debt would actually be increasing his personal net worth. On the other hand, if he was not given such credit, then the Court believes that it would be improper to count the $6,746 per month as his income since it would in fact be reducing the indebtedness against an asset that has already been divided through marital distribution.

■ The findings of the circuit court in the present case fail to show whether the appellant has been granted credit for the partnership obligation. Therefore, on the face of the record, it appears to this Court that the circuit court abused its discretion in basing the appellant's alimony obligation on the $12,746 monthly income figure, and the Court concludes that the circuit court's judgment must be reversed insofar as it relates to the amount of permanent alimony and that this case should be remanded to the circuit court for additional findings of fact and, po-

tentially, a recalculation of the amount of permanent alimony. Such recalculation should deduct from the appellant's taxable income the amount which he does not receive but which goes toward the servicing of partnership debt which existed on the date of the valuation of the partnership asset.

█ The final assertion made by the appellant is that the family law master and circuit judge abused their discretion when they directed him to pay his former wife's attorney and expert witness fees. West Virginia Code 48-2-13(a)(6), provides a circuit court with authority to make an award of costs and attorney fees. That statutory provision states:

> (6)(A) The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in the trial court. The question of whether or not a party is entitled to temporary alimony is not decisive of that party's right to a reasonable allowance of attorney's fees and court costs. An order for temporary relief awarding attorney fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal be taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal.

> (B) When it appears to the court that a party has incurred attorney fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney fees and costs to the other party.

Relating to a court award of costs and attorney fees, the Court has stated:

> " 'In a suit for divorce, the trial [court] ... is vested with a wide discretion in determining the amount of ... court costs and counsel fees, and the trial [court's] ... determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion.' Syllabus point 3, *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 2, *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982).

Syllabus Point 4, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993). Further, in *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), the Court pointed out that the purpose of the statutory language authorizing a court to award costs and attorney fees was to enable a spouse who did not have financial resources to obtain reimbursement for costs and fees incurred during litigation.

The evidence in the present case shows that the appellant's former wife largely received in marital distribution non-income producing assets consisting of the marital residence, marital furnishings, a boat and a vehicle. On the other hand, the appellant received not only his partnership interest, but various shares of stock, the cash values of life insurance policies and an investment account. The illiquidity of the appellant's assets, as a practical matter, suggests that she does not have available resources to meet her cost and fee obligations.

In view of this and the overall circumstances of this case, the Court does not find that the trial judge abused his discretion in directing the appellant to pay the appellee's attorney and expert witness fees.

For the reasons stated, this Court believes that the judgment of the circuit court should be reversed insofar as it relates to the amount of permanent alimony which the appellant is required to pay and that the amount of permanent alimony should be recalculated in accordance with the principles set forth herein. In all other regards, the Court believes that the judgment of the circuit court should be affirmed.

The judgment of the Circuit Court of Cabell County is, therefore, reversed, in part, and affirmed, in part, and this case is re-

manded for reconsideration consistent with the principles set forth herein.

Affirmed, in part, reversed, in part, and remanded.

STARCHER, Justice, concurring:

(Filed July 9, 2001)

I write separately to emphasize a point made by the majority's opinion. In the instant case, the family law master and circuit court found that the appellant's monthly income was $12,746.00 per month, and based the appellee's alimony on this figure. This Court gives deference to the findings of fact made by a family law master because he or she heard the evidence directly, and was best positioned to consider the bias and credibility of the witnesses. *See* Syllabus Point 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

On appeal, the appellant claims that $6,746.00 of his monthly income goes to retire debt in a partnership. The family law master heard evidence of the value of that partnership, and gave it a price tag of $200,000.00. Because the partnership was marital property, the appellee was awarded $100,000.00 as her share of its value.

In looking at the record, this Court cannot determine where, or whether, the partnership's debt figured into the family law master's findings. We cannot determine whether the $200,000.00 value of the partnership accounted for the debt, such that the appellant is putting $6,746.00 a month toward increasing his own personal wealth, or whether some portion of that expenditure should be attributed to the appellee. We also cannot determine whether those partnership debts could be qualified as "frivolous," *i.e.,* expenses incurred by the appellant solely as a tool to reduce the amount he would be required to pay the appellee. The family law master's findings are further unclear about whether any of the expenses were incurred after the date of the partnership's valuation, and therefore should not be applied to reduce the appellant's salary.

The Court's opinion should not be construed as a rejection of the family law master's reasoning. The appellee is clearly entitled to her marital share of the appellant's partnership, and is entitled to alimony. The record just leaves questions as to the value of that partnership asset, and alimony based upon the appellant's income. Accordingly, on remand, the family law master should endeavor to reexamine the evidence presented, and make a clear record of how the partnership's debts impact upon the value of the partnership and upon the appellant's monthly income. Any recalculation of the appellant's income, and thereby the amount of permanent alimony, should only take into account the partnership debt that existed on its date of valuation, and which was not previously accounted for by the family law master.

With that said, I respectfully concur in the majority's opinion.