Argued and submitted March 27, affirmed as modified December 20, 1989

In the Matter of the Marriage of

# WEBBER,
*Respondent,*

*and*

# WEBBER,
*Appellant.*

## (86-0858; CA A48210)

784 P2d 111

Edward L. Daniels, Albany, argued the cause for appellant. With him on the brief was Edward J. Harri, Salem.

Joel S. DeVore, Eugene, argued the cause for respondent. With him on the brief was Luvaas, Cobb, Richards & Fraser, P.C., Eugene.

Before Richardson, Presiding Judge, and Newman and Edmonds, Judges.

NEWMAN, J.

## NEWMAN, J.

Wife appeals a judgment of dissolution of a 19-year marriage. The principal issues are valuation and whether the property division is just and proper. We modify the judgment and affirm it as modified.

Husband and wife were married in 1969 and have two minor children. They do not contest the award of custody of the son to father and of the daughter to mother. At dissolution, husband was 42 and wife was 38. Each has a high school education. Husband was raised on a farm that he has continued to operate with his father. It is owned by Webber Farms, Inc., a closely held family corporation.[1] Husband's parents own the majority of the 242 shares. Since 1966, the farm has principally produced grass seed. Since about 1973, husband and wife have lived in a residence on 19 acres purchased from Webber Farms, Inc., contiguous to the farm, and the corporation farms the land as part of that operation.[2] Husband, who suffers from back problems, does managerial functions in the farming operation. He is president of the corporation and draws an annual salary of $24,000.

In 1967, before the marriage, husband's father gave 20 shares of the corporation to husband and a like number to each of his three siblings.[3] After the marriage, between 1971 and 1976, husband's parents gave him 47 more shares. In 1977 and 1978, husband and wife jointly purchased 12 shares. In 1979, they obtained an option from the parents to buy an additional 103 of their shares jointly. They were, however, unable to make payments for those shares, which remained in escrow.[4] The court found that of the 79 shares in which husband held an interest, 67 shares were gifts to him from his parents, including the 47 shares that he acquired during the marriage. It awarded husband all the shares, including the 12

---

[1] The corporation has sustained losses for tax purposes for the last seven years. Its 1986 tax return shows a loss carry over of $274,423.

[2] The corporation has paid the real property taxes on the residence and the 19 acres and has also paid the insurance on the house.

[3] Husband's siblings are no longer active in the farm operation.

[4] Husband's parents brought a declaratory judgment action for return of the shares shortly before the dissolution hearing. We agree with husband that the court did not err in finding that the option of husband and wife to purchase the shares has no value.

that he and wife had purchased jointly, gave him a camper, a 1975 Chevrolet and the right to purchase the residence with the 19 acres. The court awarded wife all of the other assets that the parties acquired during the marriage, including the family residence with the 19 acres, subject to husband's right to purchase, and his IRA account and insurance policies.

Wife assigns error to the court's valuation of the stock. Because no liquidation or sale was planned, she asserts that the court erred when it adopted the liquidation value method and considered possible corporate tax consequences of a liquidation. She values each share at $2,925; husband values each share at $595. A certified public accountant stated that he had considered the valuation methods described in Internal Revenue Ruling 59-60[5] and that the liquidation value method was appropriate.[6] Using that method, the accountant took into consideration the tax consequences of a liquidation, estimated at $69,666, because the corporation owned the farm land and would incur taxes on any gain on its sale. He set the net asset value of the corporation at $467,000. After subtracting the taxes on the estimated gain, he also subtracted the costs of sale, divided the difference by the number of shares, then subtracted from the resulting share value, a minority discount and a marketability discount, leaving a value of $595 per share.

The court valued each share at $1,650. It used the same net asset value as the accountant did and subtracted taxes on an assumed sale of the farm, but it did not subtract costs of sale or a marketability or minority discount.

■■ The court was correct in not reducing the net asset value by the estimated costs of sale or applying a minority or marketability discount. If husband were to sell his stock, he probably would sell it to his parents without significant costs of sale or minority or marketability discounts. The court, however, erred when it subtracted estimated state and federal taxes on the projected gain, for no sale of the farm was contemplated. The taxes were entirely speculative. *See Olinger*

---

[5] For a discussion of this ruling, *see Comment,* 57 Or L Rev 309 (1978).

[6] There was either no basis on which to value the stock by other methods or those methods resulted in a negative value.

*and Olinger,* 75 Or App 351, 708 P2d 64, *rev den* 300 Or 367 (1985); *Clapperton and Clapperton,* 58 Or App 577, 581, 649 P2d 620 (1982). The effect of subtracting taxes on an assumed sale of the farm was to reduce the value of each share by $288. Accordingly, we value each share at $1,938.

Wife next assigns error to the division of property. With respect to the stock, wife does not claim that she was the object of the parents' donative intent, nor does she dispute that they gave 20 shares to husband before the marriage and 47 shares to him alone during the marriage. She argues, however, that she should receive a substantial judgment against husband so that, in effect, she shares in the stock because of her contribution to the farm operation. *See Jenks and Jenks,* 294 Or 236, 241, 656 P2d 286 (1982).

Any distribution of property must be "just and proper in all the circumstances." ORS 107.105(1)(f). Valuing the stock at $1,938 per share, the court's distribution of assets gives husband net assets of $149,477, and wife net assets of $72,210.[7] It is equitable that wife should also share in the value of the stock that husband acquired during the marriage. The evidence shows that, in addition to being the homemaker for husband and their children, she assisted in the farming and corporate operations. She arranged for burning permits and gave assistance in preparing the payroll, running shuttles, feeding hired hands and going for parts. She served as corpo-

---

[7]

| Description | Husband | Wife |
|---|---|---|
| 1. Family residence (equity) | $ | $ 55,000.00 |
| 2. Personal property in possession | 1,400.00 | 2,678.00 |
| 3. Automobiles & camper | | |
|     1975 Chevrolet | 875.00 | |
|     1981 Oldsmobile | | 2,000.00 |
|     Camper | 800.00 | |
| 4. IRA - Husband | | 9,134.00 |
| 5. Life Insurance | | 4,223.00 |
| 6. Webber Farm, Inc.—stock: | | |
|     Premarital gift 20 shares | 38,760.00 | |
|     Gifts during marriage 47 shares | 91,086.00 | |
|     Purchased 12 shares | 23,256.00 | |
|     Contract of purchase 103 shares | -0- | -0- |
| | $156,177.00 | $ 73,035.00 |
| Less debts: | 6,700.00 | 825.00 |
| | $149,477.00 | $ 72,210.00 |

rate secretary along with her mother-in-law. We conclude that wife should have a $19,254 judgment against husband.[8]

■■ Wife asserts that the court erred in not awarding her more spousal support and child support for the daughter in her custody. It awarded $500 per month permanent spousal support. We agree with the court that the parties have similar education and skills. Wife has some work experience in banking, clerical and secretarial work and at the time of the dissolution was employed in a temporary position with the federal government at approximately $700 per month net. Husband has net income of $1,527 per month from the farm. There is no evidence that the corporation has paid, or is likely to pay, dividends or bonuses. After payment of spousal support, income available for husband's and the son's support will be substantially reduced. Permanent spousal support recognizes that husband's employment position as manager of the farm is secure. It will assist wife to enjoy a standard of living not overly disproportionate to that which she enjoyed during the marriage.[9]

■ We also agree with the court's determination that neither party should pay child support. *See* ORS 109.010; *Sellers and Sellers,* 39 Or App 647, *modified* 41 Or App 13, 593 P2d 1191 (1979).[10]

Judgment modified to give wife a $19,254 judgment against husband, payable within three years of the date of the appellate judgment, with interest at nine percent per annum; affirmed as modified. Costs, not including attorney fees, to wife.

---

[8] We compute the amount of the judgment as follows:

$149,477
−38,760    (20 shares × $1,938 each)
110,717
−72,210
38,507
×    .50
$ 19,254

[9] The court also did not err when it allowed husband an option to purchase the residence with the 19 acres for the appraised value. Wife did not want to move from the residence, but the acreage is contiguous to the farm and is farmed as part of the farming business. Husband takes care of his parents' nearby residence when they are absent for five months each year.

[10] Wife contends that the court erred when it did not award attorney fees. We find no abuse of discretion. *See Erpelding v. Erpelding,* 6 Or App 333, 487 P2d 1406 (1971).