IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

FILED

**February 14, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-1261

JOHN WILLIAM ERNEST WARD,
Respondent Below, Petitioner

v.

ERICA JILL WARD,
Petitioner Below, Respondent

Appeal from the Circuit Court of Mercer County
The Honorable Omar J. Aboulhosn, Judge
Civil Action No.  10-D-2

AFFIRMED, IN PART;
REVERSED AND REMANDED, IN PART

Submitted: January 14, 2014
Filed:  February 14, 2014

Anthony R. Veneri, Esq.                         Debra Kilgore, Esq.
Veneri Law Offices                              Burton Kilgore & Lazenby, PLLC
Princeton, West Virginia                        Princeton, West Virginia
Attorney for the Petitioner                     Attorney for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.  "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."  Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.  "For purposes of equitable distribution, W. Va. Code, 48-2-32(d)(1) (1984), requires that a determination be made of the net value of the marital property of the parties."  Syl. Pt. 2, *Tankersley v. Tankersley*, 182 W. Va. 627, 390 S.E.2d 826 (1990)

3.  "The fair market value of a closely held corporation or other business is not necessarily equivalent to its 'net value' under W. Va. Code, 48-2-32(d)(1) (1984). Under this provision, the net value of a closely held corporation or business equals the net amount realized by the owner should the corporation or business be sold for its fair market value. The pertinent inquiry that must be made is whether the owner-seller will be responsible for the debts of the corporation or business, assuming a sale for its market value."  Syl. Pt. 3, *Tankersley v. Tankersley*, 182 W. Va. 627, 390 S.E.2d 826 (1990).

4.  "'The market value is the price at which a willing seller will sell and a

i

willing buyer will buy any property, real or personal.' Syllabus Point 3, *Estate of Aul v. Haden*, 154 W. Va. 484, 177 S.E.2d 142 (1970)." Syl. Pt. 1, *Tankersley v. Tankersley*, 182 W. Va. 627, 390 S.E.2d 826 (1990).

5.      "'Enterprise goodwill' is an asset of the business and may be attributed to a business by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business." Syl. Pt. 2, *May v. May*, 214 W. Va. 394, 589 S.E.2d 536 (2003).

6.      "'Personal goodwill' is a personal asset that depends on the continued presence of a particular individual and may be attributed to the individual owner's personal skill, training or reputation." Syl. Pt. 3, *May v. May*, 214 W. Va. 394, 589 S.E.2d 536 (2003).

7.      "In determining whether goodwill should be valued for purposes of equitable distribution, courts must look to the precise nature of that goodwill. Personal goodwill, which is intrinsically tied to the attributes and/or skills of an individual, is not subject to equitable distribution. On the other hand, enterprise goodwill, which is wholly attributable to the business itself, is subject to equitable distribution." Syl. Pt. 4, *May v. May*, 214 W. Va. 394, 589 S.E.2d 536 (2003).

Per Curiam:

This case is before the Court upon the appeal of John William Earnest Ward ("the Husband") from the final order entered on September 5, 2012, by the Circuit Court of Mercer County, West Virginia, in a divorce case. The circuit court affirmed, in part, and reversed, in part, the family court's order.[1]   The Husband argues on appeal that the circuit court erred:  1) by reversing the decision of the family court regarding rehabilitative spousal support and substituting the circuit court's judgment to award rehabilitative spousal support at a significantly greater monthly rate and for a significantly greater duration of time; 2) by failing to value the Husband's martial interest in Advantage Timberland, Inc. ("Advantage"), as it existed on the date of separation and by failing to recognize during the valuation process that the actual compensation paid to the owners was reasonable and normal; and 3) by reversing the family court regarding the calculation of child support because the circuit court: a) failed to include the spousal support in the Wife's income; b) disregarded the statutory guidelines to calculate child support; and c) considered matters not contained within the record.  Erica Jill Ward ("the Wife") also asserts two cross-assignments of error including the circuit court and family court: 1) erred in attributing one-third of the value of Advantage to the Husband's personal goodwill; and 2) abused their discretion by not awarding to the

_____

[1]The family court's order was entered on May 15, 2012.

1

Wife her attorney's fees, expert witness fees and costs.[2] Based upon a review of the parties'

briefs and arguments, the appendix record and all other matters submitted before the Court,

we reverse the lower courts' decisions regarding the valuation of Advantage, as well as the

circuit court's calculation of child support; we affirm the circuit court's decision on all other

issues before this Court.[3]

## I. Facts

The parties were married on October 14, 2000, and separated on December 27,

2009. The Wife was thirty-four years old and the Husband was thirty-seven years old at the

time of separation. The parties have two children who were eight years old and five years

old at the time the final divorce order was entered. The parties determined that it was in the

best interests of their children that the Husband have more shared parenting time with the

children, so the parties agreed to essentially a 50/50 shared parenting agreement.[4] The basis

for the separation was irreconcilable differences.

By agreement of the parties, the Wife was a stay-at-home mom, working only

---

[2]The circuit court, in its review of the appeal from family court, also made rulings regarding a partnership distribution received by the Husband after separation and the failure to credit the Wife for the payoff of a Ford Expedition. Neither of these rulings were the subject of the instant appeal.

[3]Because we are reversing the lower court on the issues of valuation of the Husband's business and child support, we will first address these issues *infra*.

[4]The 50/50 shared parenting agreement is not on appeal.

briefly at a part-time job in a bar. She ceased working shortly after the parties' first child was born. The Husband owns a 25% interest in three businesses: Advantage, East River Timber, LLC, and Lonesome Pine Real Estate and Development, LLC. The parties agreed to the value of the Husband's interest in East River Timber, LLC, and Lonesome Pine Real Estate and Development, LLC,[5] but disputed the value of the Husband's interest in Advantage. The Husband's total income in 2011 from Advantage was $156,092. His average income for 2009, 2010, and 2011 was $146,660 or $12,221 per month.

## II. Standard of Review

West Virginia Code § 51-2A-14(c)(2008) provides that "[t]he circuit court shall review the findings of fact made by the family court judge under the clearly erroneous standard and shall review the application of law to the facts under an abuse of discretion standard." Likewise,

> [i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004); *see also* Syl. Pt. 1, *Paugh v. Linger*, 228 W. Va. 194, 718 S.E.2d 793 (2011). Keeping this standard of review in mind, we now examine the issues before us.

---

[5]The agreed upon value of the Husband's interest in East River was $1,000 and in Lonesome Pine was $20,000.

3

### III. Discussion

### A. Valuation of Advantage Timberland, Inc.

The first assignment of error concerns the valuation of Advantage. The Husband claims that both the family court and the circuit court failed to value Advantage as it existed on the date of separation as required by West Virginia Code § 48-7-104(1) (2009)[6]. Rather, the Husband argues that both courts agreed with the Wife, whose expert valued Advantage not as it existed on the date of separation – as a company operated by four individuals each of whom received income from the business – but, instead, "chose to change Advantage . . . effective the date of separation by creating a fiction that the four owners could be replaced with one executive forester for a total compensation of $120,000."[7] The Wife maintains that the Husband "confuses the date to determine the value of an asset with the method to value." According to the Wife, it was proper for the family court to adjust officer compensation to determine the fair market value of Advantage.

In valuing Advantage, the family court examined the testimony of both the expert for the Wife, Ross Dionne, and the Husband's expert, Dan Selby, each of whom

---

[6]West Virginia Code § 48-7-104(1) provides, in pertinent part, that "the court shall . . . [d]etermine the net value of all marital property of the parties as of the date of separation of the parties . . . ."

[7]The Husband does not challenge the right of experts to assess the fair market value of an asset by a theoretical sale, which is what occurs when trying to ascertain the fair market value of the business. The Husband also is not contesting the expert's right to "normalize" officer income.

valued the Husband's interest in Advantage.[8]  The record showed that Advantage managed a tract of timber for a single client, The Forest Land Group.  The tract of timber contained 625,000 acres of land. The Husband and three other partners each have a 25% interest in Advantage, making the Husband a minority interest holder in the company.  The four also act as owners and managers of Advantage.

The experts for both parties agreed that the proper method to determine the fair market value was to use the capitalization of earnings method.[9]  Further, the family court found that "[b]oth also agree that a component of this method is to adjust, or 'normalize,' officer compensation."[10]  The issue in this case focuses upon the fact that while Mr. Dionne normalized officer compensation, Mr. Selby found that the compensation paid to the officers

---

[8]Both experts were certified public accountants and certified valuation analysts.

[9]According to Mr. Dionne, the capitalization of earnings method of valuation of the business involves taking the economic stream of income after-tax that the entity can generate and applying a risk rate to that stream of income to derive a value before any discounts of marketability and minority interest.

[10]The purpose of "normalization" of income in the capitalization of earnings method of valuation is to add back to the income of the company expenses that are discretionary to the owner and not reasonably necessary for operation. According to the Wife's expert, Mr. Dionne, "you're attempting to normalize, the logic being that you're adding back the excess compensation that the people – if you and I went and bought a business we would say "Okay, what would we have to pay somebody to run this operation for us?"  The Husband's expert, Mr. Selby, added that "it's not unreasonable to make compensation adjustments if someone is taking excess capital out of there through compensation[.]"  Mr. Selby further stated, however, that  there must be some determination "as to whether or not there's excess capital contributions being made to compensation in the operation attributes of this business."

was not excessive and, therefore, there was no need to normalize the compensation.

Specifically, Mr. Dionne determined that Advantage paid the four owners total compensation of $388,432 in 2008 and $393,617 in 2009. According to Mr. Dionne, the national average for officers and directors of corporations in the timber industry was between 1% and 5.2% of net sales or between $20,000 and $115,000 per year. Additionally, in West Virginia the average compensation for an officer or manager in the timber industry was $69,655 per year. Thus, Mr. Dionne "normalized" Advantage's officer compensation to $120,000 per year. In normalizing the officer income paid by Advantage, however, Mr. Dionne assumed "that for purposes of valuing this company, that the four owners could step aside and somebody for $120,000 a year could drive this company." Thus, it was Mr. Dionne's opinion that the company could be managed by one person and not four people. Mr. Dionne's normalization of compensation reduced Advantage's actual expense for officer compensation and increased its net profits, thereby increasing the value of Advantage. Mr. Dionne determined the Husband's 25% interest in Advantage to be $310,000 as of the date of separation.

In contrast, Mr. Selby, the Husband's expert, valued the Husband's 25% interest in Advantage at $114,194. Mr. Selby did not make any adjustment for owner or officer compensation. Mr. Selby testified that there was no need to normalize income in this

case because there was no excess compensation paid. In his report, Mr. Selby stated that "[o]fficer compensation has been deemed to be adequately recognized per books." Mr. Selby testified that he relied upon Terry Owens, the President of Advantage, who told Mr. Selby that four managers were necessary to run Advantage. As Mr. Selby testified, "we're obligated to value this company as it is as of the date of separation."

Upon appeal, the circuit court upheld the family court's ruling regarding the valuation of Advantage. The circuit court found that "[d]espite the differences in opinion concerning the risk factors assigned to the valuation methods employed by the experts and the evidence supporting the same submitted to the Family Court, this Court is hard-pressed to find any errors in the Family Court's findings of facts or its application of those facts to the law."

West Virginia Code § 48-7-104(1) requires, in relevant part, that the court shall "[d]etermine the net value of all marital property of the parties *as of the date of separation . . . .*" (Emphasis added). This Court, in well-settled case law, has held that

> For purposes of equitable distribution, W. Va. Code, 48-2-32(d)(1) (1984), requires that a determination be made of the net value of the marital property of the parties.
>
> The fair market value of a closely held corporation or other business is not necessarily equivalent to its "net value" under W. Va. Code, 48-2-32(d)(1) (1984). Under this provision, the net value of a closely held corporation or business equals the

net amount realized by the owner should the corporation or business be sold for its fair market value. The pertinent inquiry that must be made is whether the owner-seller will be responsible for the debts of the corporation or business, assuming a sale for its market value.

Syl. Pts. 2 and 3, *Tankersley v. Tankersley*, 182 W. Va. 627, 390 S.E.2d 826 (1990).

Further, "'[t]he market value is the price at which a willing seller will sell and a willing buyer will buy any property, real or personal.' Syllabus Point 3, *Estate of Aul v. Haden*, 154 W. Va. 484, 177 S.E.2d 142 (1970)." *Tankersley,* 182 W. Va. at 628, 390 S.E.2d at 827, Syl. Pt. 1.


In the instant case, in valuing Advantage, Mr. Dionne did not just apply the acceptable capitalization of earnings method; rather, Mr. Dionne transformed the business from one being owned and managed by four people to a business being owned and managed by one person. Transforming the business in this manner greatly decreased the compensation expense of Advantage and greatly increased the profitability of the company. This act in valuing Advantage in a business form that did not exist on the date of separation goes far beyond any fair market valuation of the business. Succinctly stated, Mr. Dionne valued a business that did not exist on the date of separation. Mr. Dionne could have "normalized" the compensation of the four owners and managers, finding that the salaries paid to the four individuals far exceeded the average national compensation and the average compensation paid in West Virginia for doing the same work and adjusted that compensation accordingly. That is not what Mr. Dionne did. Instead, he did not value Advantage as it existed on the

8

date of separation; he valued a hypothetical business that did not and does not exist. Both the family court and the circuit court, in adopting Mr. Dionne's valuation, abused their discretion. Both lower courts adopted a valuation that violated the provisions of West Virginia Code § 48-7-104(1), requiring the courts to "[d]etermine the net value of all marital property of the parties as of the date of separation." This requirement was not done in this case and, therefore, the decisions of the circuit court and the family court are reversed and remanded for further consideration consistent with this opinion.

## B. Personal Goodwill

Further, because this case is remanded regarding valuation of Advantage, we address the cross-assignment of error made by the Wife concerning personal goodwill, another factor in determining the value of Advantage. The Wife argues that the family court and the circuit court erred in attributing one-third of the value of Advantage to the Husband's personal goodwill. Conversely, the Husband argues that both courts, relying on the Husband's expert, Mr. Selby, found that one-third of the Husband's interest in Advantage was attributed to the Husband's personal goodwill. Unlike Mr. Selby, the Wife's expert, Mr. Dionne, did not interview any of the officers of Advantage regarding personal goodwill. Mr. Dionne simply accepted the fact that because Advantage had basically one customer, whether the Husband left the company or not did not alter Advantage's work for that one customer in managing the timberland. Mr. Selby's testimony regarding personal goodwill, however, was derived from his interview of Mr. Owen, the President of Advantage. According to Mr.

Selby, Mr. Owen was unequivocal that one-third of Advantage's revenue would be lost if the

Husband left the business.

In *May v. May*, 214 W. Va. 394, 589 S.E.2d 536 (2003), this Court held in

syllabus points two, three and four that:

> "Enterprise goodwill" is an asset of the business and may be attributed to a business by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business.

> "Personal goodwill" is a personal asset that depends on the continued presence of a particular individual and may be attributed to the individual owner's personal skill, training or reputation.

> In determining whether goodwill should be valued for purposes of equitable distribution, courts must look to the precise nature of that goodwill. Personal goodwill, which is intrinsically tied to the attributes and/or skills of an individual, is not subject to equitable distribution. On the other hand, enterprise goodwill, which is wholly attributable to the business itself, is subject to equitable distribution.

The family court made significant findings of fact regarding personal goodwill

based upon evidence before it determined that

> [b]oth Terry Owen and the Husband proved in court that the Husband possesses personal relationships with most of the loggers hired by Advantage Timberland, and those loggers would follow the Husband if he left Advantage Timberland and went to another competitor.

10

[b]oth Terry Owen and the Husband proved in court that the Husband possesses personal integrity with, and a good report with, the governmental regulators who scrutinize the logging and timber operations, and losing the Husband to a competitor would decrease the ability of Advantage Timberland to replace him with another individual who could perform his duties and satisfy the regulators with the efficiency that the Husband generates.

Dan Selby relied on the Husband's personal relationships with the loggers, and his personal integrity, and with report with, the regulators in determining that the Husband possess "personal" goodwill qualities that cannot be claimed as the marital property or "enterprise" goodwill of Advantage Timberland.

After considering the interviews of Mr. Owen and the Husband together with legal principles in **May v. May, supra**., Dan Selby employed a 33 1/3% "personal" goodwill discount to reduce the marital share of the Husband's 25% interest in Advantage Timberland from $114,194.00 to $76,133.00.[11]

Ross Dionne did not refute the "personal" goodwill discount.

The circuit court concluded that the family court did not err in determining that the Husband possessed personal goodwill that remained his personal property and was not subject to equitable distribution. Based upon the Court's review of the circuit court's ruling regarding personal goodwill, the circuit court's decision was supported by the law and the

---

[11]The family court and the circuit court did not adopt Mr. Selby's valuation of Advantage. The deduction of the 1/3 for personal goodwill was actually as follows: The value of the Husband's interest in Advantage was $310,000, which was then reduced by one-third for the Husband's personal goodwill, which was not considered to be marital property subject to equitable distribution. Thus, there was $103,323 discount for personal goodwill, which left the final value of the Husband's share in Advantage at $206,677. The Wife received one-half of that final value or $103,339.

11

evidence. Thus, no error was committed and we affirm the circuit court's decision on this issue.

## C. Child Support

The next issue is whether the circuit court erred in reversing the family court's decision regarding the calculation of child support by failing to include the spousal support it awarded in the Wife's income when calculating child support.[12] The Husband contends that when the circuit court made its own child support calculation and awarded the Wife the amount of $1,153.82 "pursuant to the attached worksheet[,]"it did not include the significant sum of $3250 in monthly spousal support that the circuit court granted to the Wife in her income for purposes of calculating child support. The Wife argues that the circuit court was following what the family court had done in calculating the child support award. The Wife does not dispute that spousal support paid to the Wife was not included in the Wife's gross income for purposes of calculating child support. Instead, the Wife argues that "if it was error not to include spousal support to Wife as income in the child support calculation, it is harmless."

---

[12]The Husband also argues that the circuit court "solicited facts not in the record" developed before the family court, but from soliciting information from each party's counsel. The information involved how much actual time each party spent with the children. The circuit court needed this information in order to ascertain the percentage of time each party actually cares for the children. At the time the circuit court made the request there was no objection raised by the Husband. The circuit court modified the child support awarded to "accurately reflect the amount of hands-on time each parent spends with the children, as opposed to focusing only on the number of overnight stays." We find no error by the circuit court on this issue.

West Virginia Code § 48-1-228(b)(9)(2009), provides:

> (a) "Gross income" means all earned and unearned income. The word "income" means gross unless the word is otherwise qualified or unless a different meaning clearly appears from the context. When determining whether an income source should be included in the child support calculation, the court *shall* consider the income source if it would have been available to pay child-rearing expenses had the family remained intact . . . .
>
> (b) "Gross income" includes, but is not limited to the following:
>
> . . . .
>
> (9) Spousal support and separate maintenance receipts.

(Emphasis added).

According to the record, it is clear that the $3250 the Husband pays the Wife in spousal support was not included as gross income for the Wife on the worksheet prepared by the circuit court for purposes of calculating child support. Because the worksheet attached to the circuit court's order plainly shows error in the calculation, the circuit court's order regarding child support to be paid by the Husband to the Wife is reversed and remanded to the circuit court to recalculate by including the spousal support in the Wife's gross income.

### D. Rehabilitative Alimony

This issue involves whether the circuit court erred in increasing the rehabilitative support awarded to the Wife by $1,250 per month. The family court had ordered rehabilitative spousal support in the amount of $2000 for a period of ten months commencing on June 1, 2012, and ending March of 2013. The circuit court, on appeal,

13

increased the amount of rehabilitative spousal support to $3250 and increased the length of award to a five year period beginning October 1, 2012. The Husband argues that the circuit court erred in reversing the family court's award of rehabilitative spousal support. The Husband contends that the family court's factual findings were not clearly erroneous and the circuit court failed to apply the statutory requirement set forth in West Virginia Code § 48-8-105(a) (2009) that a person seeking rehabilitative spousal support must prove that he or she has made "reasonable efforts[] to become gainfully employed." *See id.* ("The court may award rehabilitative spousal support for a limited period of time to allow the recipient spouse, through reasonable efforts, to become gainfully employed."). Conversely, the Wife argues that the circuit court properly reversed the family court's spousal support both in its amount and duration. The Wife maintains that the circuit court correctly found that the family court improperly focused primarily upon the length of the marriage and failed to consider all the relevant factors that should be taken into account in determining whether to award rehabilitative spousal support. *See* W. Va. Code § 48-6-301 (2009).[13]

---

[13]West Virginia Code § 48-6-301(b) sets forth the following factors that shall be considered by the circuit court:

> b) The court shall consider the following factors in determining the amount of spousal support, child support or separate maintenance, if any, to be ordered under the provisions of parts 5 [§§ 48-5-501 et seq.] and 6 [§§ 48-5-601 et seq.], article five of this chapter, as a supplement to or in lieu of the separation agreement:
> (1) The length of time the parties were married;

(continued...)

14

[13](...continued)

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education

(continued...)

15

In making its determination on this issue, the family court found that the marriage was slightly more than nine years and two months in duration. The family court also found that the Wife had three years towards receiving a Bachelor's degree in education; however, she chose not to finish her undergraduate degree. Instead, the Wife obtained a loan of $20,000 in order to buy a Montessori School that she was going to operate. The family court had warned the Wife at the temporary hearing that "in the view of the Court, marriages of less than 10 years in duration are not generally a candidate for any long term spousal support award[.]" The family court determined that

> the Wife has essentially not taken advantage of the Court's significant award of temporary spousal support and child support.

---

[13](...continued)
and training described in subdivision (10) above;
(13) The costs of educating minor children;
(14) The costs of providing health care for each of the parties and their minor children;
(15) The tax consequences to each party;
(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;
(17) The financial need of each party;
(18) The legal obligations of each party to support himself or herself and to support any other person;
(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and
(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

For 26 months, the Wife has received $2,250.00 per month in spousal support, received $1,519.00 per month in child support, and possessed the marital residence [although making the monthly payment of same out of the spousal support award]. This amounts to at least **$97,994.00** in total support. She has not made any effort to either finish her four year college education [she has three years under her belt already] or obtain any reasonable, paying job where she could support herself and promote the best interests of her children financially.[14]

The family court further stated that the Wife had gone into debt to purchase the Montessori School that she knew had not been profitable for the prior owner. The family court found that West Virginia Code § 48-8-105(2009) provides that "[a]n award of rehabilitative spousal support is appropriate when the dependent spouse evidences a potential for self-support that could be developed through rehabilitation, training or academic study." *Id*. The family court concluded that "a limited rehabilitative spousal support award is appropriate . . . . [D]ue to the disparity in income now, and due to the agreement during the marriage that the wife would raise the parties' children, it is fair and equitable to now allow Wife the opportunity to obtain an independent career." The family court then awarded the Wife rehabilitative spousal support in the amount of $2000 for a ten month period.

In reversing the family court's rehabilitative spousal support award, the circuit

---

[14]According to the family court's order, in addition to receiving one of the couple's cars, a 2006 Ford Expedition, the allocation of personal property from the real estate, and ½ of the equity in the real estate, the Court provided the Wife with an additional $126,273 as a cash sum from the Husband to equalize the distribution of marital property and debts. The family court noted that "[t]his is a tax free sum payable by the Husband to the Wife."

court found that while the facts were not in dispute and, therefore, the family court's factual findings were not clearly erroneous, the family court abused its discretion in limiting the spousal support award to just ten months. The circuit court found that the family court's "emphasis on the length of the marriage in this case appeared to have been a major, if not the primary factor when it determined the amount and length of rehabilitative spousal support award." The circuit court, relying upon this Court's decision in *Porter v. Porter*, 212 W. Va. 682, 575 S.E.2d 292 (2002),[15] noted that the length of the marriage is only one of many factors to be considered in awarding rehabilitative spousal support. The circuit court then reviewed the factors set forth in West Virginia Code § 48-6-301(b), including the Wife's education, the Wife's stay-at-home status during the marriage that "permitted the Husband to embark on the lucrative partnership from which the entire family benefitted[,]" and the Wife's employment prospects. The circuit court ultimately found that

> The Wife only requested that her rehabilitative spousal support continue for a five year period. To expect the Wife to live on only a monthly eleven hundred dollar plus child support award come February 2013, whereas the Husband, in all likelihood, will continue to earn between $11,000 and $13,000 per month, is unreasonable.

The circuit court awarded the Wife $3250 in monthly spousal support for a five year period beginning on October 1, 2012.

---

[15]*See Porter*, 212 W. Va. at 685, 575 S.E.2d at 295 ("Other provisions in the law govern the award, and amount, of alimony where the parties have actually been formally married, as is the situation in the present case. The length of time the parties have been married is only one of many factors in such a situation.")

In assessing whether to award rehabilitative alimony, the circuit court properly focused upon all of the relevant statutory factors. *See id.* We find that the circuit court did not abuse its discretion on this issue and therefore affirm.

## E.  Attorney's Fees

The Wife also cross-assigns as error the failure of the family court and the circuit court to award her any of her requested attorney's fees. The Wife sought $41,127.38[16] in attorney's fees from the Husband.[17] Neither the family court nor the circuit court awarded the Wife the fees she sought; however, the family court allowed the parties to divide one of the Husband's retirement accounts so that the parties could pay attorney's fees and retain experts. Thus, the Wife did receive one-half of the $14,284 in the retirement account, but that money was paid about thirty days after separation.

In denying the Wife her requested attorney's fees, the family court found that the Wife will receive "a substantial sum for the division of marital property, including ½ of the equity in the home, ½ of the Husband's remaining retirement account, and a cash sum of $126,273.00." Further, the family court found that "[t]he Wife has already received around $100,000.00 in combined spousal support and child support from the Husband." The family

---

[16]The amount of $28,000 was incurred by the Wife in family court; the remainder of the attorney's fees was incurred by the Wife on appeal to circuit court.

[17]The Husband incurred attorney fees in the amount of $16,504.19.

19

court noted that the marriage was less than ten years prior to separation and that neither party was attributed fault. The family court concluded:

> The Court should consider a wide array of factors regarding the award of attorney's fees. Specifically, the Court should consider the parties' ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each parties' standard of living, the degree of fault of either party, and the reasonableness of the attorney's fee request. **Gros[e] v. Gros[e], 222 W. Va. 722, 671 S.E.2d 727 (2008).**[18]
>
> Analyzing the required factors, the wife will receive a substantial sum for the division of marital property, spousal support, ½ of the husband's retirement account, child support and possession of the home.
>
> Each attorney obtained beneficial results for their client. There were excellent attorney advocating in this case. The expert fees appear pricey. Fault was not an issue in this case.

---

[18]Syllabus point four of *Grose* provides as follows:

> "'In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family . . . [court] and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family . . . [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.' Syllabus Point 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996)." Syllabus, *Landis v. Landis*, [223] W. Va. [325], 674 S.E.2d 186 (2007).

222 W. Va. at 724, 671 S.E.2d at 729.

> Each party, therefore, is responsible for payment of their own attorney's fees and expenses.

(Footnote added).

In reviewing the circuit court's decision to affirm the family court and hold both parties responsible for his or her own attorney's fees, the circuit court did not abuse its discretion.

## IV. Conclusion

Based upon the foregoing, the decision of the circuit court is affirmed, in part, and reversed and remanded, in part, for further proceedings regarding the valuation of the Husband's interest in Advantage and for recalculation of child support taking into account as gross income for the Wife the amount of spousal support paid to her by the Husband.

Affirmed, in part;
Reversed and remanded, in part.